UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                              Chapter 13

Kathryn Barbour-Freeman, and                        Case No. 16-54594
Garvin Duane Freeman,
                                                    Hon. Phillip J. Shefferly
     Debtors.
_____/

**OPINION GRANTING IN PART AND DENYING IN PART MOTION FOR
AN AWARD OF DAMAGES AND DISGORGEMENT OF ATTORNEY FEES**

## Introduction

This matter is before the Court on a motion filed by joint debtors in a
Chapter 13 case against their former attorney seeking an award of damages and
disgorgement of attorney fees. For the reasons set forth in this opinion, the Court will
grant some but not all of the relief requested in the motion.

## Jurisdiction

This a core proceeding under 28 U.S.C. § 157(b)(2)(B), over which the Court
has jurisdiction pursuant to 28 U.S.C. § 1334(a) and 28 U.S.C. § 157(a).

## Facts

The following facts are not in dispute.

Garvin Duane Freeman and Kathryn Barbour-Freeman ("Debtors") are a married couple who live at 1515 McCarthy Street, Ypsilanti, Michigan 48198 ("Property"). Garvin is a retired part-time musician and Kathryn is a patient companion. They both collect social security and live on a very modest budget. Sometime in 2016, Stonecrest Financial ("Stonecrest"), which held a first mortgage on the Property at that time,[1] began a foreclosure proceeding on the Property because the Debtors were in default under the mortgage.

A local attorney, Adam J. Gantz ("Gantz"), learned of the foreclosure proceeding and reached out to the Debtors to tell them he could help them formulate a "foreclosure prevention plan" to save the Property from the foreclosure. Gantz sent the Debtors a Notice Regarding Foreclosure ("Notice"). The Notice explained that the foreclosure prevention plan may include the filing of a Chapter 13 bankruptcy case, a Chapter 7 bankruptcy case, a "short sale/deed in lieu of foreclosure/cash for redemption," or "foreclosure litigation." The Notice urged the Debtors to call Gantz as soon as possible. The Debtors did so, and retained Gantz to represent them. The foreclosure prevention plan that Gantz formulated for the Debtors was to file a Chapter 13 bankruptcy case.

---

[1] The Court file reflects that the mortgage was subsequently transferred to a different entity.

-2-

On October 26, 2016, the Debtors filed this Chapter 13 bankruptcy case. According to the Federal Rule of Bankruptcy Procedure 2016(b) statement filed by Gantz, the Debtors agreed to pay Gantz a flat fee of $3,500.00. On the same day that they filed their Chapter 13 petition, the Debtors filed their schedules of assets and liabilities and a Chapter 13 plan. The Debtors listed the Property on schedule A/B as having a value of $61,800.00, and listed Stonecrest's mortgage on schedule D in the amount of $110,110.21.

The Debtors' case was pretty uneventful through confirmation. On January 14, 2017 the Court confirmed the Debtors' first amended Chapter 13 plan ("Plan"), which required the Debtors to make 60 monthly payments of $1,112.63 to the Chapter 13 Trustee ("Trustee"). The Plan provided that the Debtors would keep the Property and that the Trustee would disburse to Stonecrest regular monthly mortgage payments of $674.92, and monthly payments of $316.84 to catch up on the Debtors' arrearage on the Stonecrest mortgage. The Plan provided for a zero dividend to the holders of unsecured claims. The order confirming the Plan directed the Trustee to make payments on claims that have been filed and deemed allowed under § 502(a) of the Bankruptcy Code.

Although the Plan provided for payments to Stonecrest, as of the confirmation date, Stonecrest had not filed a proof of claim and therefore did not have an allowed secured claim. That meant that the Trustee could not begin making the disbursements to Stonecrest required by the Plan. Still, that did not pose a serious problem because the bar date for filing claims was March 2, 2017. Stonecrest had nearly two months in which to file a proof claim after the Plan was confirmed. Unfortunately, it did not do so.

The bar date came and went without Stonecrest filing a proof of claim. The Debtors made their Plan payments to the Trustee, but the Trustee held back making any disbursements under the Plan to Stonecrest because Stonecrest had still not filed a proof of claim.

On May 12, 2017, consistent with her ordinary practices, the Trustee sent a four-month review letter to Gantz to alert him that Stonecrest had not filed a proof of claim. Two weeks later, on May 26, 2017, the Trustee sent a second email to Gantz advising that he may want to consider filing a protective proof of claim for Stonecrest, because the Trustee was otherwise going to have to disburse the funds paid by the Debtors under the Plan to the holders of allowed unsecured claims. Gantz did not do so.

-4-

More time passed by without Stonecrest or Gantz filing a proof of claim for the Stonecrest mortgage. On July 7, 2017, the Trustee sent another email to Gantz advising that the Trustee would have to begin disbursing funds to the holders of unsecured claims. The Trustee continued to delay disbursing the funds paid into the Plan by the Debtors, in the hope that either Stonecrest or the Debtors would finally file a proof of claim so that the Trustee could disburse the Plan payments to Stonecrest. On August 9, 2017, the Trustee sent Gantz a follow up email reminding him that there was still no proof of claim filed for Stonecrest. On August 22, 2017, the Trustee sent Gantz another email that advised him that the Trustee needed a proof of claim for Stonecrest filed by August 28, 2017 to avoid disbursing the payments intended for Stonecrest to the Debtors' unsecured creditors. When Gantz still did not file a proof of claim, the Trustee sent him a final email on September 5, 2017, stating that because the Trustee still had not received a proof of claim for Stonecrest, the Trustee would disburse the funds on hand on September 6, 2017.

According to Gantz, he was expecting Stonecrest to file a proof of claim. After receiving the first email from the Trustee in May, 2017, Gantz contacted Stonecrest and was assured that it would be filing a proof of claim. However, it did not do so.

Relying on Stonecrest's assurance, Gantz did not file a protective claim on behalf of Stonecrest.

Throughout these months, the Debtors were becoming alarmed. They were having difficulty reaching Gantz either by phone or email, and were concerned because they had received phone calls directly from Stonecrest indicating that representatives of Stonecrest had not been able to reach Gantz either. The Debtors continued unsuccessfully to try to reach Gantz by phone and email to get him to file a proof of claim for Stonecrest.

Finally, in early September, 2017, the Debtors reached Gantz by phone. In response, Gantz sent the Debtors an email on September 7, 2017, telling them he was "going to have to file a proof of claim on behalf of" Stonecrest. On September 15, 2017, Gantz sent an email to the Trustee stating that he was working on filing a proof of claim. On the same day, Gantz filed a proof of claim for Stonecrest in the amount of $110,110.21. Unfortunately, it was too late.

By this time, the Trustee – who had held the Debtors' payments much longer than could reasonably have been expected after confirmation – disbursed $8,762.49 on September 6, 2017, just as she said she would do in her September 5, 2017 email. None of this went to Stonecrest. Instead it all went to the Debtors' unsecured

creditors. This meant that, in addition to still owing all of the arrearage they owed to Stonecrest when they filed their Chapter 13 case, the Debtors had now missed eleven more mortgage payments.

On January 30, 2018, the Trustee informed the Debtors that the Plan was running long. Frantic, the Debtors made many calls to Gantz to get some advice about what to do. Gantz did not respond to their calls. On February 19, 2018, the Debtors obtained from the Trustee a list of local Chapter 13 attorneys that they might consider hiring to replace Gantz. On February 27, 2018, the Debtors filed a notice of substitution that they had hired Charles J. Schneider, P.C. ("Schneider") to replace Gantz as their Chapter 13 attorney.

On March 30, 2018, Schneider filed a proposed plan modification to increase the Debtors' monthly payments into the Plan by $189.39 for the next 45 months to make up for the disbursements that had gone to the unsecured creditors instead of to Stonecrest. The proposed plan modification noted that because Stonecrest did not have a proof of claim on file until September 15, 2017, the Debtors' unsecured creditors had already received $8,762.49 that was intended for Stonecrest, resulting in payment of 59.5% of their allowed unsecured claims under a plan that was confirmed with a zero dividend for unsecured claims. The plan modification was

approved without objection. Since then, the Debtors have continued to make their Plan payments, and the Trustee has continued to make disbursements to Stonecrest under the Plan.

On April 16, 2018, Schneider filed on behalf of the Debtors a Motion for Disgorgement of Attorney Fees and the Award of Damages, Costs and Attorney Fees ("Motion") (ECF No. 36). The Motion seeks an award against Gantz in the amount of $19,309.64 of damages, costs and attorney fees under § 526 of the Bankruptcy Code, and disgorgement by Gantz of $3,500.00 of attorney fees under §§ 329 and 330 of the Bankruptcy Code. On May 9, 2018, Gantz filed a response (ECF No. 45). On June 12, 2018, the Court held a hearing.

At the conclusion of the hearing, the Court inquired of Schneider and Gantz whether they wished to supplement the record. They did not. The Court then conferred with Schneider and Gantz about the possibility of mediating the Motion. They both agreed to do so. The Court appointed a mediator and directed the parties to complete the mediation by July 31, 2018. The Court advised the parties that it would defer ruling on the Motion until after the parties had completed the mediation. The parties have now done so. Unfortunately, the mediation was not successful, so

the Court will now rule on the Motion, first addressing the request for relief under § 526, and then under §§ 329 and 330.

## Section 526

The Motion first seeks relief under § 526 of the Bankruptcy Code, titled "Restrictions on debt relief agencies." In 2005, Congress added § 526 to the Bankruptcy Code by the Bankruptcy Abuse Prevention Consumer Protection Act ("BAPCPA"). In <u>Milavetz, Gallop & Milavetz, P.A. v. United States</u>, 559 U.S. 229 (2010), the United States Supreme Court explained that Congress enacted BAPCPA to "correct perceived abuses of the bankruptcy system." <u>Id.</u> at 231-32. "Among the reform measures the Act implemented are a number of provisions that regulate the conduct of 'a debt relief agency' – i.e., professionals who provide bankruptcy assistance to consumer debtors." <u>Id.</u> at 232. The Supreme Court decided in <u>Milavetz</u> that "a debt relief agency" as used in § 526 includes attorneys.

The Motion cites five subparts of § 526, but no case law citations or other supporting authorities. The first two subparts are § 526(a)(1) and (3). Section 526(a)(1) states that an attorney shall not "fail to perform any service that such [attorney] informed [a debtor] it would provide in connection with a case or proceeding under this title[.]" Section 526(a)(3) states that an attorney shall not

-9-

"misrepresent to any [debtor], directly or indirectly, affirmatively or by material omission, with respect to – (A) the services that such [attorney] will provide to such person[.]"

The Debtors allege in the Motion that Gantz violated § 526(a)(1) by failing to perform, and § 526(a)(3) by misrepresenting that he would perform, a service for them in connection with their case. The specific service that the Debtors allege that Gantz failed to perform, and misrepresented that he would perform, is described in paragraph 24 of the Motion as follows:

> Gantz failed to perform a service that he informed the Debtors that he would perform which was to give a priority of payment to the Debtors' mortgagee in order to prevent the future occurrence of a foreclosure on the Debtors' residence. The service that was required was to file a proof of claim on behalf of the Debtors' mortgagee if it should fail to do so. Gantz represented to the Debtors that the mortgagee would receive a priority of payment ahead of other unsecured claims when they signed the chapter 13 plan drafted by Gantz.

The Debtors allege in paragraph 11 of the Motion that it was "incumbent upon" Gantz to file a protective proof of claim on behalf of Stonecrest, and in paragraph 14 that Gantz had a "duty" to do so. In their affidavit filed in support of the Motion, the Debtors state that Gantz "neglected to follow-up on our case and either compel the mortgagee to file its proof of claim or file one on behalf of the mortgagee in a timely manner." The Motion and affidavit further allege that the Debtors tried unsuccessfully

-10-

for months to contact Gantz to get him to file a protective proof of claim for Stonecrest.

Gantz responds that he fully performed the service that he was hired to perform: file and confirm a Chapter 13 plan that stays the foreclosure by Stonecrest and provides for a priority of payments under the Plan to Stonecrest ahead of any distribution to unsecured creditors. Gantz argues that the only time that he ever told the Debtors that he would file a protective proof of claim for Stonecrest was in his September 7, 2017 email, and that he followed through and filed the protective claim a week later. According to Gantz, any problem in Stonecrest receiving its distributions under the Plan was solely Stonecrest's fault. If anything, Gantz went above and beyond what he told the Debtors he would do for them when he filed the protective proof of claim for Stonecrest on September 15, 2017.

The retainer agreement between the Debtors and Gantz is not attached to the Motion or otherwise made a part of the record. The Rule 2016(b) statement filed by Gantz generally describes the services that Gantz agreed to provide as "legal services for all aspects of the bankruptcy case," and has a non-exclusive list of examples. However, the list does not include the filing of a protective proof of claim for a creditor who fails to timely file a proof of claim. Neither the Motion nor the affidavit

identify any specific agreement, other document or conversation in which Gantz stated that he would file a protective proof of claim for Stonecrest. The only communication from Gantz to the Debtors that shows that Gantz ever informed or represented to the Debtors he would file a protective proof of claim for Stonecrest was his September 7, 2017 email in which he says "I'm going to have to file a proof of claim on behalf of the mortgage company. I hope to be able to get it filed tomorrow (Friday)."

Waiting until September 15, 2017 to file a protective proof of claim for Stonecrest was too late to prevent the Trustee from paying the Debtors' unsecured creditors ahead of Stonecrest. But Gantz's filing of a protective claim on that date does not violate either § 526(a)(1) or (3) absent evidence that Gantz either informed or represented to the Debtors that he would file a protective proof of claim by some earlier date. There is no such evidence in the record. The generalized description of "legal services" in Gantz's Rule 2016(b) statement is not sufficient to find that Gantz either informed or represented to the Debtors that he would file a protective proof of claim for Stonecrest by some earlier date. Therefore, the Motion's request for relief under § 526(a)(1) and (3) must be denied.

The next two subparts the Motion cites are § 526(c)(2)(A) and (C). An award under § 526(a)(2)(A) is only warranted if Gantz "intentionally or negligently failed

to comply with any provision of this section." As explained above, the Motion alleges, but does not establish, a violation of either § 526(a)(1) or (a)(3). Because the Motion does not establish that Gantz failed to comply with any provision of § 526, there is no basis for an award under § 526(c)(2)(A). But there is a basis for an award under § 526(c)(2)(C) if Gantz "intentionally or negligently disregarded the material requirements" of the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure that are "applicable" to Gantz. This raises the question of whether Gantz – quite apart from what he told the Debtors he would do – was required by law to file a protective proof of claim for Stonecrest.

Section 501(c) of the Bankruptcy Code states that "[i]f a creditor does not timely file a proof of such creditor's claim, the debtor or the trustee may file a proof of such claim." Federal Rule of Bankruptcy Procedure 3004 specifies the time period for the debtor or the trustee to file a claim in these circumstances. The rule states that if a creditor does not timely file a proof of claim under Rule 3002(c) in a Chapter 13 case, "the debtor or trustee may file a proof of claim within 30 days after the expiration of the time for filing claims prescribed by Rule 3002(c)[.]"[2] In this case,

---

[2] At the time of confirmation of the Plan, there was no requirement for a secured creditor to file a claim in a Chapter 13 case. That has since been changed. On December 1, 2017, Federal Rule of Bankruptcy Procedure 3002(a) was amended to require a secured creditor to file a proof of claim.

-13-

the bar date for filing claims was March 2, 2017, which means that the 30 days provided by Rule 3004 gave Gantz – as the Debtors' attorney – until April 1, 2017 in which to file a proof of claim.[3] Both the statute and the rule permitted, but did not require, Gantz to file a protective proof of claim for Stonecrest. The Motion does not cite any legal authority that required Gantz to do so.

When Stonecrest did not timely file a proof of claim, Gantz, although not required to do so, could have filed a claim on behalf of Stonecrest to make sure that Stonecrest received the payments provided for it by the Plan. Gantz states that he initially did not file a protective proof of claim because he did not feel he had sufficient information. Further, he argues that he relied upon Stonecrest's assurance that it was going to file its own proof of claim. Those are good arguments – to a point. Obviously, it is preferable for a mortgage creditor to file its own proof of claim because it has access to the most information needed to ensure an accurate proof of claim. And it is understandable that Gantz would rely on Stonecrest's assurance that it was going to file its own proof of claim. However, Gantz must have had some

---

[3] Rule 3004 also gave the Trustee the same amount of time, but did not impose a duty on the Trustee to do so. As a matter of practice, the Trustee ordinarily does not file a proof of claim on behalf of a mortgage creditor because the Trustee does not have sufficient records or other information to put together a reasonably accurate proof of claim and, unlike a debtor, the Trustee does not have the financial incentive to ensure that a proof of claim is filed on behalf of a mortgage creditor.

-14-

information about Stonecrest's claim since he listed it on the Debtors' schedule D and provided for regular monthly payments and arrearage payments on it under the Plan. Moreover, as the drafter of the Plan, Gantz had to know that if Stonecrest did not timely file a proof of claim, then the Debtors' entire purpose in filing their Chapter 13 case – which was to save the Property – would be defeated unless he filed a protective proof of claim. The longer Gantz waited, the greater the risk.

Once the Trustee emailed Gantz on August 22, 2017, telling Gantz that he needed to file a protective proof of claim by August 28, 2017, "to avoid disbursements to unsecured" creditors, it was no longer reasonable for Gantz to continue to delay filing the proof of claim. Gantz eventually recognized this fact, because he did file a protective proof of claim on September 15, 2017. Unfortunately, that was too late. Knowing how the Plan that he drafted was structured, the potential consequences if Stonecrest did not file its own proof of claim, and that his own clients were urgently trying to get him to file a proof of claim, it was patently unreasonable for Gantz to delay doing so until September 15, 2017.

However, § 526 does not state that a *delay* by an attorney in performing a service – particularly one that is not required to be performed at all, let alone by a date certain – means that an attorney has "intentionally or negligently disregarded" a

-15-

material requirement of the Bankruptcy Code or Bankruptcy Rules. The Motion does not identify any specific "material requirement" of the Bankruptcy Code or Bankruptcy Rules that applies to this case. Nor do the Debtors cite even a single case where an attorney's delay in performing a task that is permitted, but not required, constitutes intentional or negligent disregard of the type described in § 526(c)(2)(C). The Debtors certainly would have been better served if Gantz had filed a protective claim sooner than he did, but his delay in doing so, even though unreasonable, does not support a finding that he intentionally or negligently disregarded a material requirement of the Bankruptcy Code or Bankruptcy Rules within the meaning of § 526(c)(2)(C).

The fifth and last subpart of § 526 that the Motion cites is § 526(c)(5)(B). A civil penalty is appropriate under that subsection only if the Court "finds that a person intentionally violated this section, or engaged in a clear and consistent pattern or practice of violating this section." As noted earlier, Gantz's delay in filing a protective claim for Stonecrest, although unreasonable, is not a violation of § 526. Therefore, it is irrelevant whether such delay was intentional on his part. And there is no allegation in the Motion that Gantz has engaged in a clear and consistent pattern

or practice of violating § 526.  Accordingly, it is not appropriate to impose a civil penalty against Gantz under § 526(c)(5)(B).

The crux of the Debtors' complaint against Gantz is not that he failed to do something that he said he would do, or that is required by law.  Rather, it is that he did not act sooner to do something that the Bankruptcy Code and Bankruptcy Rules permitted him to do to help the Debtors: file a protective proof of claim on behalf of Stonecrest.  The Debtors are understandably upset that Gantz waited too long to file a protective proof of claim for Stonecrest to ensure that Stonecrest received the disbursements earmarked by the Plan.  To them, Gantz's delay is even more egregious because of the continuous efforts they and the Trustee made to communicate to Gantz the need to file a protective proof of claim.  It may well be that Gantz's delay violated the recognized standard of acceptable professional practice or care for a consumer bankruptcy attorney in this community.[4]  But that is not the issue before the Court. The issue before the Court is simply whether Gantz's delay in filing a protective proof of claim for Stonecrest constitutes the type of abuse covered by § 526 or warrants the

---

[4] Section 526 was added by BAPCPA to prevent certain perceived abuses inflicted on individual consumer debtors.  But it does not create a federal malpractice standard for bankruptcy attorneys.  If anything, § 526(d) makes it clear that § 526 neither alters nor limits existing state laws regulating an attorney's qualifications and  conduct.

imposition of remedies under § 526.  For the reasons explained, the Court finds that it does not.[5]

## Sections 329 and 330

The Motion next seeks relief under §§ 329 and 330 of the Bankruptcy Code. Section 329(a) requires an attorney representing a debtor in a case under title 11 to file "a statement of the compensation paid or agreed to be paid[.]"  Section 330(a) determines whether an attorney may be awarded that compensation.  Under § 330(a)(4)(B), in a Chapter 13 case, the Court may award an attorney for a debtor "reasonable compensation . . . for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section."  "If such compensation exceeds the reasonable value of any such services," § 329(b) permits the Court to "cancel any such agreement, or order the return of any such payment, to the extent excessive[.]"

The Motion points out that Gantz accepted the presumptively reasonable flat fee of $3,500.00 for the Debtors' Chapter 13 case.  That fee was approved in the order confirming the Plan and then paid to Gantz.  The Motion argues that this fee exceeds

---

[5] Because the Court does not find a violation of § 526, it need not address the specific amounts that the Debtors seek under § 526.

-18-

the reasonable value of the services rendered by Gantz because Gantz's unreasonable delay in filing a protective proof of claim for Stonecrest resulted in $8,762.79 intended for Stonecrest being disbursed instead to the Debtors' unsecured creditors. As a result, the Debtors argue that the entire $3,500.00 fee paid to Gantz must be disgorged under § 329.

Even though the Court finds that Gantz did not violate § 526, and denies the Debtors' request for relief under that section, the Court agrees with the Debtors that the $3,500.00 fee paid by the Debtors to Gantz exceeds the reasonable value of his services, and must be disgorged. It is undisputed that the Debtors were in default under the Stonecrest mortgage and facing foreclosure. It is likewise undisputed that Gantz solicited them as clients to help them save the Property from foreclosure, and that is what they hired Gantz to do. The action that Gantz took to accomplish this objective was to file a Chapter 13 petition for the Debtors. The Plan provided for a zero distribution to unsecured creditors and provided for regular mortgage and arrearage payments to Stonecrest. Those payments were the means to accomplish the Debtors' goal of saving the Property. When Stonecrest did not file a proof of claim to ensure that it received the distributions provided for by the Plan, the only way that the Debtors would receive the benefit of the Plan was for Gantz to file a protective

proof of claim on Stonecrest's behalf. The Bankruptcy Code and the Bankruptcy Rules permitted him to do so. Had he timely done so, he would have earned the $3,500.00 fee that the Debtors paid him to file their Chapter 13 case and confirm their Plan. But when the Trustee disbursed $8,762.49 to the Debtors' unsecured creditors, the Debtors were now far worse off than they had been when they filed their Chapter 13 case. Their Chapter 13 case had stayed the foreclosure sale, but they were now eleven more months behind on their mortgage. The Plan was now running long and would not succeed in saving the Property from foreclosure. By not filing a protective proof of claim, Gantz effectively destroyed any value of the Chapter 13 case to the Debtors.

When Gantz finally filed the protective proof of claim, that stopped the bleeding going forward, but left the Debtors' case in serious peril. To make up the missed payments to Stonecrest, the Debtors had to modify the Plan by substantially increasing their Plan payments for the next 45 months. Hopefully, the Debtors will be successful in completing the Plan and saving the Property. But if they do so, it will not be as a result of the services by Gantz. Even though Gantz did not violate § 526, Gantz's services had no value to the Debtors unless and until either Stonecrest filed a proof of claim or he filed a protective proof of claim on its behalf. That he did not

do so until September 15, 2017 rendered his services to that date of no value. Therefore, the Court orders the disgorgement of $3,500.00 of fees by Gantz to the Debtors.

## <u>Conclusion</u>

The Debtors hired Gantz to file a Chapter 13 case to save the Property from foreclosure. Gantz did a fine job up through confirmation. But in order for the Debtors to obtain a benefit from this case, there had to be a proof of claim filed for Stonecrest. When Stonecrest failed to file a proof of claim, any value of the Debtors' case would only be realized if Gantz filed a protective proof of claim as the law permitted him to do. Unfortunately, he did not do so until the horse was out of the barn. The Trustee delayed for an extraordinary length of time making disbursements under the Plan so that Stonecrest or Gantz could file a proof of claim. When the Trustee could delay no longer, the Trustee paid the Debtors' unsecured creditors with the funds intended for Stonecrest. That rendered all of Gantz's services valueless. What's more, it caused the Debtors to incur significant additional expenses to hire a new lawyer to file a plan modification, take over their Chapter 13 case, and file the Motion. These expenses will make it harder for the Debtors to save the Property.

-21-

The Court will enter an order under § 329 requiring Gantz to disgorge the $3,500.00 fee paid to him but will not award any relief under § 526.

**Signed on September 10, 2018**

/s/ Phillip J. Shefferly
_____
**Phillip J. Shefferly**
**United States Bankruptcy Judge**